✓ FILED ___ ENTERED
____ LOGGED _____ RECEIVED

2:45 pm, Feb 11 2026

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____DG_____Deputy

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTERS OF THE SEARCHES OF: | **Filed Under Seal** |
| **INFORMATION ASSOCIATED WITH ACCOUNTS THAT IS STORED AT PREMISES CONTROLLED BY SNAP, INC. ("TARGET SNAPCHAT ACCOUNTS")** | Case No. 25-mj-03151 |
| **INFORMATION ASSOCIATED WITH ACCOUNTS THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC ("TARGET GOOGLE ACCOUNTS")** | Case No. 25-mj-03152 |
| **INFORMATION ASSOCIATED WITH AN ACCOUNT THAT IS STORED AT PREMISES CONTROLLED BY APPLE INC. ("TARGET APPLE ACCOUNT")** | Case No. 25-mj-03153 |
| **INFORMATION ASSOCIATED WITH AN ACCOUNT THAT IS STORED AT PREMISES CONTROLLED BY YAHOO INC. ("TARGET YAHOO ACCOUNT")** | Case No. 25-mj-03154 |

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANTS

I, Grace Meyer, a Special Agent with the Federal Bureau of Investigation ("FBI"), being

duly sworn, deposed and state as follows:

### INTRODUCTION

1.    I make this affidavit in support of an application for search warrants under

Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703 authorizing the following:

      a.    The search and seizure of information, described in Attachment B-1, associated
with the following Snap, Inc. ("Snapchat") accounts (collectively the "**TARGET
SNAPCHAT ACCOUNTS**"), described in Attachment A-1, and believed to be
used by Brian Hsiao Shaw ("SHAW"):

| | |
|---|---|
| simpysigmasi | **TARGET SNAPCHAT ACCOUNT 1** |
| tyguy779 | **TARGET SNAPCHAT ACCOUNT 2** |

      b.    The search and seizure of information, described in Attachment B-2, associated

with the Google, LLC ("Google") accounts associated with the following email addresses (collectively the "**TARGET GOOGLE ACCOUNTS**"), described in Attachment A-2, and believed to be used by SHAW:

| bshawb10@gmail.com | **TARGET GOOGLE ACCOUNT 1** |
| zoldyckch@gmail.com | **TARGET GOOGLE ACCOUNT 2** |
| tylergray810@gmail.com | **TARGET GOOGLE ACCOUNT 3** |
| tennisguy719@gmail.com | **TARGET GOOGLE ACCOUNT 4** |
| simpkinsty527@gmail.com | **TARGET GOOGLE ACCOUNT 5** |
| karophite@gmail.com | **TARGET GOOGLE ACCOUNT 6** |
| fluidsyncopy@gmail.com | **TARGET GOOGLE ACCOUNT 7** |
| bhsh101s@gmail.com | **TARGET GOOGLE ACCOUNT 8** |
| simpkins527@gmail.com | **TARGET GOOGLE ACCOUNT 9** |

    c.   The search and seizure of information, described in Attachment B-3, associated with the Apple Inc. ("Apple") iCloud account with Apple ID brn1o1s@yahoo.com ("**TARGET APPLE ACCOUNT**"), described in Attachment A-3, and believed to be used by SHAW; and

    d.   The search and seizure of information, described in Attachment B-4, associated with the Yahoo Inc. ("Yahoo") account with email address brn1o1s@yahoo.com ("**TARGET YAHOO ACCOUNT**"), described in Attachment A-4, and believed to be used by SHAW.

2.      Based on my training, experience, and the facts in this affidavit, there is probable cause to believe that:

    a.   SHAW, a registered sexual offender, has committed violations of 18 U.S.C. § 18 U.S.C. § 2252(a)(2) (distribution of child pornography), 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography), and 18 U.S.C. § 2250(a) (failure to register as a sex offender) (the "Target Offenses");

    b.   SHAW is the user of the **TARGET SNAPCHAT ACCOUNTS**, the **TARGET GOOGLE ACCOUNTS**, the **TARGET APPLE ACCOUNT**, and the **TARGET YAHOO ACCOUNT** (collectively the "**TARGET ACCOUNTS**"); and

    c.   the **TARGET ACCOUNTS** will contain evidence, instrumentalities, contraband, or fruits of the Target Offenses.

### AGENT BACKGROUND

3.      I am a Special Agent of the FBI and have been so employed since February 2023. As such, I am an officer of the United States who is empowered by law to conduct investigations

of and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code. I am currently assigned to the FBI Child Exploitation and Human Trafficking Task Force in Baltimore, Maryland. I have duties that include investigations of federal violations concerning child pornography and the sexual exploitation of children. I have participated in the execution of multiple search warrants, which have resulted in the seizure of computers, cell phones, electronic media, and other items evidence violations of federal laws. I have also participated in the execution of search warrants for online accounts, such as email accounts, online storage accounts, and other online communication accounts related to child exploitation and/or child pornography.

## AFFIDAVIT

4.      The statements in this affidavit are based in part on information and reports provided by the FBI and other agencies and law enforcement officers, and on my experience and background as a Special Agent of the FBI. Since this affidavit is being submitted for the limited purpose of securing search warrants, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of the Target Offenses.

5.      Unless otherwise stated, the conclusions and beliefs I express in this affidavit are based on my training, experience, and knowledge of the investigation, and reasonable inferences I have drawn from my training, experience, and knowledge of the investigation.

6.      Unless otherwise noted, wherever in this affidavit I assert that a statement was made, that statement is described in substance and is not intended to be a verbatim recitation of such statement. Wherever in this affidavit I quote statements, those quotations have been taken

12

from draft transcripts, which are subject to further revision.

## NCMEC CYBERTIPLINE

7.      The National Center for Missing and Exploited ("NCMEC") receives complaints via their CyberTipline from Internet Service Providers (ISPs), Electronic Service Providers (ESPs), and others.  U.S. ESPs are required by U.S. federal law to report "apparent child pornography" to NCMEC via the CyberTipline (18 U.S.C. §2258A) if they become aware of the content on their servers.  Leads are reviewed by specially-trained analysts, who examine and evaluate the reported content, add related information that may be useful to law enforcement, use publicly-available search tools to determine the geographic location of the apparent criminal act, and ultimately provide all of the gathered information to the appropriate law enforcement agency for review and possible investigation.

8.      The CyberTipline receives reports on the following type of criminal conduct: possession, manufacture and distribution of child pornography; online enticement of children for sexual acts; child prostitution; sex tourism involving children; child sexual molestation; unsolicited obscene material sent to a child; misleading domain names; and misleading words or digital images on the Internet.

9.      The CyberTipline reports will vary in detail depending on the nature of the report, and which entity submits it.  However, the reports will include any known information (1) relating to the identity of any individual who appears to have violated federal law by committing or attempting to commit the criminal conduct described above; (2) historical information on when or how a customer or subscriber of an ECS or RCS uploaded, transmitted, or received apparent child pornography; (3) geographical information on the involved individual or website, which may include the IP Address or verified billing address or geographic identifying

13

information, including area code or zip code; (4) any images of apparent child pornography; and (5) the complete communication containing any image of apparent child pornography.  See 18 U.S.C. § 2258A(b).  Also, as will be illustrated below, CyberTipline reports can be supplemented and made in connection with other CyberTipline reports.

## SNAPCHAT INFORMATION

### (Snapchat Warrant)

10.    Snapchat is owned by Snap, Inc.  Snapchat is a messaging application for mobile devices.  The application provides a way to share moments with photos, videos and text.  Some of the features of Snapchat are Snaps, Stories, Memories and Chat.  Snaps are when a user takes a photo or video using their mobile device in real-time and selects which of their friends to send the message to.  Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after the message is opened in the case of the recipient.)  Users are able to save a photo or video they've taken locally to their device or to Memories, which is Snapchat's cloud-storage service.

11.    A user can add a photo or video Snaps to their "Story."  Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchat users or just the user's friends for up to 24 hours.  Stories can also be saved in Memories.

12.    Memories is Snapchat's cloud-storage service.  Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories.  A user can also edit and send Snaps and create Stories from these Memories.  Snaps, Stories, and other photos and videos saved in Memories are backed up by us and may remain in Memories until deleted by the user.

13.    A user can also type messages, send photos, videos, audio notes, and video notes

14

to friends within Snapchat application using the Chat feature.  A user sends a Chat message to a friend, and once it is viewed by both parties and both parties swipe away from the Chat screen, the message will be cleared.  Within the Snapchat application itself, a user can opt to save part of the Chat by tapping on the message that the user wants to keep.  The user can clear the message by tapping it again.

## GOOGLE INFORMATION

### (Google Warrant)

14.    Google provides numerous free services to the users with a Google account. Some of these services include Gmail, YouTube, Voice, Blogger, Google+, Android, Photos, Drive, Location History, and Search and Browsing History. Gmail is a web based email service. YouTube is a free video sharing website that allows users upload, view and share videos. Voice is Google's calling, voicemail transcription, and text messaging service.  Blogger is Google's free weblog publishing tool for sharing text, photos, and video. Google+ is a forum to share photos, videos, and other information with other users.  Android is Google's open source operating system used for mobile devices.  Photos stores images for a broad range of Google products. Drive is Google's online storage service for a wide range of file types.  Waze, a GPS navigation software application, is owned by Google and is another service that may store and use location information.

15.    In my training and experience, evidence of who was using a particular Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from

15

further suspicion.

16.     Moreover, the stored communications and files connected to a Google account may provide direct evidence of the offense under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offense under investigation.

17.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geolocation, date, and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

18.     Account activity may also provide provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a plan to commit a crime), or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

19.     Other information connected to a Google account may lead to the discovery of

additional evidence. For example, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

20.     Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google's services. In my training and experience, such information may constitute evidence of the crimes under investigation including attribution information—i.e., information that can be used to identify the account's user or users.

## APPLE AND iCLOUD INFORMATION

### (Apple Warrant)

21.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

22.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

23.     Additional information is captured by Apple in connection with the use of an

17

Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

24.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

25.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email

(iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

## YAHOO INFORMATION

### (Yahoo Warrant)

26.     Yahoo provides numerous free services to the users with a Yahoo account. Some of the services include Mail and Messenger. Yahoo Mail is a web-based email service that can also be accessed via a mobile app. Yahoo email comes with 1TB of free storage and users can send and receive emails up to 25 megabytes in size, including attachments. Emails remain in an active Yahoo account until deleted by the user.  Yahoo Messenger is an instant messaging service that provides text and voice communication. Users can also share files and images through the Messenger service.

27.     Yahoo allows subscribers to obtain email accounts at the domain name yahoo.com and aol.com.  Subscribers obtain an account by registering with Yahoo.  During the registration process, Yahoo asks subscribers to provide basic personal information.  Therefore,

the computers of Yahoo are likely to contain stored electronic communications (including retrieved and unretrieved email for Yahoo subscribers) and information concerning subscribers and their use of Yahoo services, such as account access information, email transaction information, and account application information.

28.    A Yahoo subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Yahoo. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

## SUMMARY CONCERNING CHILD PORNOGRAPHY, PERSONS WHO POSSESS AND COLLECT CHILD PORNOGRAPHY, AND HOW USE OF COMPUTERS AND THE INTERNET RELATES TO THE POSSESSION, RECEIPT, AND DISTRIBUTION OF CHILD PORNOGRAPHY

29.    Based on my experience in child exploitation investigations and upon information provided to me by other law enforcement officers, the following can be true of child molesters/child pornographers:

a.    Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b.    Such individuals may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.    Such individuals may possess and maintain their copies of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain their pictures, films, video tapes, photographs,

magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, and child erotica, etc. for many years.

d.      Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer or cellphone, and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, or in online storage, email accounts or other online communication accounts, to enable the individual to view the collection, which is valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis.

e.      Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.[1]

f.      Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/collectors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses (including email addresses), and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

g.      Individuals who would have knowledge on how to distribute and receive digital images of child pornography through the use of Peer-to-Peer networks and other online methods would have gained knowledge of its location through online communication with others with similar interests. Other forums, such as bulletin boards, newsgroups, IRC chat or chat rooms have forums dedicated to the trafficking of child pornography images. Individuals who utilize these types of forums may be considered more advanced users and therefore more experienced in acquiring a collection of child pornography images.

h.      Such individuals prefer not to be without their child pornography for any prolonged time period. This behavior has been consistently documented by law enforcement officers involved in the investigation of child pornography throughout the world.

30.     Based on my investigative experience related to computer and internet related

---

[1] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"); *see also United States v. Seiver*, 692 F.3d 774, 778 (7th Cir. 2012) (Posner, J.) (collecting cases, *e.g.*, *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *United States v. Richardson*, 607 F.3d 357, 370-71 (4th Cir. 2010); and *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010), for the principle that the "same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography").

child pornography investigations, and the training and experience of other law enforcement

officers with whom I have had discussions, I have learned the following:

     a.     Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized. It has also revolutionized the way in which child pornography collectors interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls. Any reimbursement would follow these same paths.

     b.     The development of computers, smartphones and the internet have added to the methods used by child pornography collectors to interact with and sexually exploit children. Computers, smartphones, and the internet serve four functions in connection with child pornography. These are production, communication, distribution, and storage.

     c.     Smartphones have the capability to access the Internet and store information, such as videos and images. As a result, an individual using a smartphone can send, receive, and store files, including child pornography, without accessing a personal computer or laptop. An individual using a smartphone can also easily plug the device into a computer (via a USB cable) or connect with a computer via Bluetooth, and transfer data files from one digital device to another. Some smartphone users can and do create, communicate, upload, and download child pornography, and communicate with children to coerce them or entice them to produce child pornography or perform sexual acts, by using internet based social media or electronic service providers like Google, Snapchat, or Apple (and many others).

     d.     The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. Electronic storage media of various types – to include computer hard drives, external hard drives, CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices that are plugged into a port on the computer – can store thousands of images or videos at very high resolution. It is easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. Some media storage devices can easily be concealed and carried on an individual's person. Smartphones and/or mobile phones are also often carried on an individual's person.

     e.     Child pornography can be transferred via electronic mail or through file transfer protocols ("FTP") to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), easy access to the Internet, and online file sharing and storage, the computer is a preferred method of distribution and receipt of child pornographic materials.

f. Individuals also use online resources to retrieve and store child pornography.  Some online services allow a user to set up an account with a remote computing service that may provide email services and/or electronic storage of computer files in any variety of formats.  A user can set up an online storage account (sometimes referred to as "cloud" storage) from any computer or smartphone with access to the Internet.  Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer, smartphone, or external media in most cases.

g. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes.  Storing this information can be intentional (i.e., by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files) or unintentional.  Digital information, such as the traces of the path of an electronic communication, may also be automatically stored in many places (e.g., temporary files or ISP client software, among others).  In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used.  Such information is often maintained indefinitely until overwritten by other data.

h. In my recent investigative experience, as well as recent discussions with law enforcement officers, I know that individuals who collect child pornography are using email accounts, online storage accounts, and other online communications accounts to obtain, store, maintain, and trade child pornography with growing frequency, in addition to, or as an alternative to, the use of personal devices.

i. Based on traits shared by collectors, the use of email, online storage accounts, and other online communication accounts, and the increased storage capacity of computers and server space over time, there exists a fair probability that evidence regarding the distribution, receipt and possession of child pornography will be found in the **TARGET ACCOUNTS** and notwithstanding the passage of time.

j. In addition, computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet.  Electronic files downloaded to a hard drive can be stored for years at little to no cost.  Even when such files have been deleted, they may be recoverable months or years later using readily available forensic tools.

## PROBABLE CAUSE

31. On or about October 23, 2025, FBI Baltimore received information from the Howard County (Maryland) Police Department (HCPD) regarding an investigation into **SHAW** for the distribution of child pornography.  The investigation was initiated after HCPD received a NCMEC CyberTipline Report regarding the upload of child pornography to a Snapchat account.

32. On or about October 30, 2025, I met with HCPD and learned the following

regarding HCPD's investigation.  On or about December 27, 2024, Snapchat filed CyberTipline

Report 204051625 with NCMEC for the upload of two apparent child pornography videos by the

user of Snapchat account "aaa47999" on December 26, 2024.  The suspect information provided

in this report for "aaa47999" listed the date of birth "July 8, 2002," email address

"portapotty717@gmail.com," and IP Address "71.206.47.153" as being used to access this

account on December 26, 2024, at 08:41:51 UTC.  The video files are described below:

      a.     The video with filename "aaa47999-None-faac9173-73cb-5535-be4a-

05056e41958a~83-5c56d5433a-content.mp4" is approximately 54 seconds in length and depicts

a prepubescent minor, based on a lack of pubic hair and child-like facial features, inserting an

object into her vagina by bouncing up and down.

      b.     The video with filename "aaa47999-None-faac9173-73cb-5535-be4a-

05056e41958a~73-ecfbf154bc-content.mp4" is approximately 34 seconds in length and depicts a

nude female child seated with her legs spread, fully exposing her vagina.  The child does not

have any pubic hair.  The child has some breast development.  Throughout the video, the child

urinates and touches her vagina with her fingers.

33.     Upon receiving CyberTipline Report 204051625, HCPD investigators learned that

the same Snapchat user was the subject of another CyberTipline Report, CyberTipline Report

202972294, submitted by Snapchat on November 29, 2024.  As documented in this CyberTipline

Report, Snapchat user "aaa47999" uploaded one image with filename "aaa47999-None-

c50ce5d3-0d8a-5a31-9511-5bb9ec0c383c~33-d5b23d79f9-content.jpg" which depicted a

prepubescent male child, based on body size and child-like facial features, lying on a floor of a

home with his eyes closed and his right hand inside his pants.  The image was uploaded on

November 28, 2024, at 08:44:59 UTC.  The suspect information provided in this CyberTipline

Report listed the date of birth "July 8, 2002," email address "portapotty717@gmail.com," and IP Address "69.138.31.22" as being used to access this account on November 28, 2024, at 14:33:52 UTC.

34.    On or about April 14, 2025, pursuant to a subpoena, Comcast provided HCPD with the following subscriber information associated to IP address 71.206.47.153 with activity on December 26, 2024, at 08:41:51 UTC, and IP address 69.138.31.22 with activity on November 28, 2024, at 14:33:52 UTC:

> Subscriber Name: Individual 1[2]
> Service Address: 10308 Princeton Cir, Elliott City, MD 21042-5828
> Billing Address: 10308 Princeton Cir, Elliott City, MD 21042-5828
> Telephone: (410) 418-8935, (301) 221-1710
> Type of Service: Internet
> Account Number: 8299400311110956
> Account Status: Active

35.    On or about April 25, 2025, pursuant to a search warrant authorized by the Honorable Lara Weathersbee, Circuit Court Judge for Howard County, Snapchat provided records associated to Snapchat user "aaa47999." Located in the account were the two video files from CyberTipline Report 204051625 and the one image file from CyberTipline Report 202972294. The records provided by Snapchat revealed that Snapchat user "aaa47999" previously used the username "s_gurl817." Also located in the account were one video file and two image files sent from Snapchat user "s_gurl817" to another Snapchat user on December 26, 2024, which depicted a pubescent female child engaged in sexually explicit conduct. These files are described below:

a.    Image file "chatmedia_v42024-12-26-08-29-35UTCs_gurl817lil_casper42savedbEiASFTl6dEJkS29Yc29zb2Q1NlcyNHRVcDIBfkgCUARg

---

[2] Individual 1 is believed to be **SHAW**'s uncle.

AQ~v4.jpeg" depicts the pubescent female child's vagina with an object inserted into it.

b.      Image file "chatmedia_v42024-12-26-08-30-

52UTCs_gurl817lil_casper42savedbChxZN2paZ042TFV1Q1d5M0ZwZTdVTUYuMTAyMF8x

EiUSGlk3alpnTjZMVXVDV3kzRnBlN1VNRi4xMDIwMgEESAFQHmAB~v4.jpeg" depicts

the pubescent female child spreading her labia with her fingers.

c.      Video file "chatmedia_v42024-12-26-08-31-

41UTCs_gurl817lil_casper42savedbEiQSFW5mSGNYekg1ZkI1OGVLYUo0ZUQ5bhoAGgAy

AX5IAlAEYAE~v4.mp4" is approximately 10 seconds in length and depicts the pubescent

female child masturbating her vagina with her fingers.

36.      The records provided by Snapchat also revealed that Snapchat user "s_gurl817"

sent an image of himself to another user on December 11, 2024.  HCPD consequently learned

that **SHAW**, a registered sexual offender, was receiving mail at the 10308 Princeton Cir, Ellicott

City, Maryland ("SHAW's residence").[3]  A visual comparison of SHAW's Maryland Motor

Vehicle Administration photo and the photo sent by Snapchat user "s_gurl817" of himself

revealed the Asian adult male depicted in both photos was consistent in appearance.

37.      On or about October 22, 2025, HCPD investigators conducted surveillance in the

vicinity of the residence located at 10308 Princeton Cir, Ellicott City, Maryland.  Observed in the

driveway was a black Toyota 4Runner bearing Maryland license plate 8GP3017 ("SHAW's

vehicle").  A query of Maryland Motor Vehicle Administration records revealed this vehicle was

registered to SHAW and Individual 2, an individual known to be SHAW's father.

38.      On or about October 29, 2025, HCPD's Crime Reduction Team obtained a court

---

[3] On April 1, 2014, SHAW was convicted of distribution of child pornography and possession of child pornography
in the United States District Court for the District of Maryland and sentenced to 84 months imprisonment followed
by a lifetime term of supervised release.

order authorizing real-time location pings for SHAW's telephone number, 443-928-3819. This

telephone number is listed in the Maryland Department of Public Safety and Correctional

Services Sexual Offender Registry. The first ping was in the vicinity of Centennial Park West,

located at 4701 Centennial Lane, Ellicott City, Maryland. This park is approximately 2.0 miles

from SHAW's residence. HCPD investigators consequently initiated surveillance and located

SHAW's vehicle at the park. Shortly thereafter, investigators observed SHAW giving tennis

lessons to minors. HCPD investigators later observed SHAW enter his vehicle and proceed in

the direction of his residence.

   39.    On or about October 31, 2025, the Honorable Chelsea Crawford, United States

Magistrate Judge for the District of Maryland, authorized search warrants for SHAW's

residence, vehicle, and person., as well as a criminal complaint and arrest warrant for SHAW for

the distribution of child pornography.

   40.    On or about November 3, 2025, the FBI, the United States Marshals Service, and

HCPD executed the search warrants and arrest warrant at SHAW's residence. Located in

SHAW's bedroom were an Apple iPhone 15 Pro Max ("Apple iPhone") and a Samsung SM-

F936U1 cell phone ("Samsung phone"). Located in the bathroom directly adjacent to SHAW's

bedroom were a Motorola One 5G UW Ace cell phone ("Motorola One 5G UW phone") and a

Motorola Moto G Power cell phone ("Moto G Power phone").

   41.    On or about November 3, 2025, following the execution of the search warrant, I

processed the Apple iPhone, the Samsung phone, the Motorola One 5G UW phone, and the Moto

G Power phone for review.

   42.    During my review of the Apple iPhone, I observed the following:

        a.    The Apple iCloud account associated with the Apple iPhone was the

**TARGET APPLE ACCOUNT**. The telephone number associated to the Apple iPhone was 410-905-5408.

b.      The forensic software I used to review the extraction of the Apple iPhone automatically produced a list of user accounts, referring to all online accounts that were accessed from and/or located on the Apple iPhone. This list included the **TARGET YAHOO ACCOUNT**, **TARGET GOOGLE ACCOUNT 1**, and **TARGET GOOGLE ACCOUNT 6**.

c.      Approximately six videos of child pornography were located on the devices. One of the videos is entitled "11yo_Peter_Sneak_Blanket_Jerk_1.3gpp." This video file is a color video approximately 1 minute and 3 seconds in length depicting a male child who appears to be under a blanket. The child's underwear is pulled down and shirt pulled up, exposing the child's penis. Throughout the video, the child masturbates his penis. The child lacks pubic hair and has child-like facial features.

43.     During my review of the Samsung phone, I observed the following:

a.      The forensic software I used to review the extraction of the Samsung phone automatically produced a list of user accounts, referring to all online accounts that were accessed from and/or located on the Samsung phone. This list included the **TARGET GOOGLE ACCOUNT 7** and **TARGET GOOGLE ACCOUNT 8/** The telephone number associated to the Samsung phone was 443-928-3819, the telephone number registered to **SHAW** in the Maryland Department of Public Safety and Correctional Services Sexual Offender Registry.

44.     During my review of the Motorola One 5G UW phone, I observed the following:

a.      The forensic software I used to review the extraction of the Motorola One 5G UW phone automatically produced a list of user accounts, referring to all online accounts that

were accessed from and/or located on the Motorola One 5G UW phone.  The list included the **TARGET GOOGLE ACCOUNT 2**, **TARGET GOOGLE ACCOUNT 3**, **TARGET SNAPCHAT ACCOUNT 2**, and a Discord account associated to **TARGET GOOGLE ACCOUNT 9**. No telephone number was associated with the device.

        b.      At least 100 images and/or videos of child pornography were located on the device. One of the videos is entitled "VID-20180709-WA0013.mp4." This video file is a color video approximately 1 minute and 57 seconds in length depicting a nude female toddler lying on her back with her legs spread, fully exposing her vagina. Throughout the video, an adult male digitally penetrates the toddler's anus. The adult male also rubs the child's vagina with his pointer finger and inserts his pointer finger into her vagina. Later in the video, the adult male does the same with his thumb.

45.      During my review of the Moto G Power phone, I observed the following:

        a.      The forensic software I used to review the extraction of the Moto G Power phone automatically produced a list of user accounts, referring to all online accounts that were accessed from and/or located on the Moto G Power phone. This list included the **TARGET GOOGLE ACCOUNT 1**, **TARGET GOOGLE ACCOUNT 2**, **TARGET GOOGLE ACCOUNT 4**, and **TARGET SNAPCHAT ACCOUNT 1**. The telephone number associated with the Moto G Power phone was 443-928-3819, the telephone number registered to **SHAW** in the Maryland Department of Public Safety and Correctional Services Sexual Offender Registry.

        b.      At least 100 images and/or videos of child pornography were located on the device. One of the video files is entitled "Early Beginners.mp4." This video file is a color video approximately 2 minutes and 30 seconds in length depicting a nude female toddler standing in front of a nude prepubescent male child. Throughout the video, the female toddler

either places her mouth, hands, or fingers on the prepubescent male child's penis or the prepubescent male child masturbates his own penis.

46.    On or about November 11, 2025, pursuant to a subpoena, Snapchat provided subscriber information for the **TARGET SNAPCHAT ACCOUNTS**.  The records for **TARGET SNAPCHAT ACCOUNT 1** indicated the email address associated to the account was **TARGET GOOGLE ACCOUNT 5**. The account was created on April 5, 2025, from IP address 71.206.47.153, the same IP address documented in associated with Snapchat user "aaa47999" in CyberTipline Report 204051625 discussed above.  The account was last active on October 29, 2025. The records for **TARGET SNAPCHAT ACCOUNT 2** indicated the email address associated to the account was **TARGET GOOGLE ACCOUNT 3**, and the account was last active on October 29, 2025.

47.    On or about November 12, 2025, SHAW was indicted by a Grand Jury for the District of Maryland for distribution of child pornography, possession of child pornography, and failure to register as a sex offender.

## SUMMARY

48.    Based on the facts detailed above, as well as my training and experience, **SHAW** appears to have a sexual interest in children, that includes the distribution and possession of child pornography. Further, based on my training and experience, as well as the activity detailed above, I also believe that **SHAW** displays characteristics common to individuals who have a sexual interest in children and who possess, collect, receive, or distribute child pornography, as discussed above.  Based on these characteristics, and because the aforementioned online accounts appear to be accessed, controlled, and/or created by **SHAW**, I respectfully submit there is probable cause that the **TARGET ACCOUNTS** contain evidence of distribution and

possession of child pornography.

## CONCLUSION

49.     Based on the foregoing information, I respectfully submit that probable cause exists to believe that the records associated with the **TARGET ACCOUNTS** will contain contraband, evidence, fruits, and instrumentalities of violations of the **TARGET OFFENSES**.

50.     Wherefore, in consideration of the facts presented, I respectfully request pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703, that the Court authorize the search for the information set forth in Attachments B-1, B-2, B-3, and B-4, where applicable, which constitute fruits, evidence, and instrumentalities of the **TARGET OFFENSES**.  I further request that the Court direct Snap, Google, Apple, and Yahoo to disclose to the government any information described in Section I of Attachments B-1, B-2, B-3, and B-4, that is within their possession, custody, or control.

51.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of the Snap, Google, Apple, and Yahoo Warrants. The government will execute the warrants by serving them upon Snap, Google, Apple, and Yahoo. Because Snap, Google, Apple, and Yahoo will compile the requested records at a time that is convenient for them, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

*Grace C. Meyer*
_____
Special Agent Grace Meyer
Federal Bureau of Investigation

31

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this _____5th_____ day of December 2025.


HONORABLE CHELSEA J. CRAWFORD
UNITED STATES MAGISTRATE JUDGE

### ATTACHMENT A-1

**Property to Be Searched**

This warrant applies to information associated with the following Snapchat accounts, believed to be used by Brian SHAW:

a.   Username **simpysigmasi**

b.   Username **tyguy779**

that is stored at premises owned, maintained, controlled, or operated by Snap Inc., a company with offices at 2772 Donald Douglas Loop North, Santa Monica, California 90405.

4

1

### ATTACHMENT A-2

### Property to Be Searched

This warrant applies to information associated with the following Google accounts, believed to be used by Brian SHAW:

    a.  Email address **bshawb10@gmail.com**

    b.  Email address **zoldyckch@gmail.com**

    c.  Email address **tylergray810@gmail.com**

    d.  Email address **tennisguy719@gmail.com**

    e.  Email address **simpkinsty527@gmail.com**

    f.  Email address **karophite@gmail.com**

    g.  Email address **fluidsyncopy@gmail.com**

    h.  Email address **bhsh101s@gmail.com**

    i.  Email address **simpkins527@gmail.com**

that is stored at premises owned, maintained, controlled, or operated by Google, a company with offices at 1600 Amphitheatre Parkway, Mountain View, California 94043.

1

## ATTACHMENT A-3 (TARGET APPLE ACCOUNT)

### Property to Be Searched

This warrant applies to information associated with the following Apple account, believed to be used by Brian SHAW:

    a.   Apple ID **brn1o1s@yahoo.com**

that is stored at premises owned, maintained, controlled, or operated by Apple, a company with offices at One Apple Park Way, Cupertino, California 95014.

1

## ATTACHMENT A-4 (TARGET YAHOO ACCOUNT)

### Property to Be Searched

This warrant applies to information associated with the following Yahoo account, believed to be used by Brian SHAW:

a. Email address **brn1o1s@yahoo.com**

that is stored at premises owned, maintained, controlled, or operated by Yahoo, a company with offices at 391 San Antonio Road, Mountain View, California 94040.

1

**ATTACHMENT B-1 (Snapchat Warrant)**

**Particular Things to Be Seized**

**I.    Information to be Produced by Snapchat from November 1, 2024 through the Present**

To the extent that information associated with the Snapchat accounts described in Attachment A-1 is within the possession, custody, or control of Snap, Inc., Snap, Inc. is required to disclose to the government the following information pertaining to the **TARGET SNAPCHAT ACCOUNTS**:

a.    All records or other information stored by an individual using the account, including address books, contact and friend lists, calendar data, pictures, videos, messages, communications, profile information and pictures, writings and files;

b.    All records or other information regarding the identification of the accounts described in Attachment A-1, to include full name, date of birth, gender, user name, vanity name, physical address, telephone numbers, email addresses and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, all screen names associated with subscribers and/or accounts, all account names associated with the subscriber, methods of connecting, log files, means and source of payment (including any credit or bank account number), and detailed billing records;

c.    Logs of Snaps sent and received, posted Stories, and for any unopened Chats or Chats saved by a sender or recipient. Include the meta-data about the Snaps, Stories, and Chats, for the accounts described in Attachment A-1;

d.    All records pertaining to communications between Snap and any person regarding the account, including contacts with support services and records of actions taken;

e.    All Snaps content to include all images, videos, messages, and other files, and associated sent date and timestamp, including all available metadata concerning these files;

f.    All Story content to include all images, videos, messages, and other files, and associated sent date and timestamp, including all available metadata concerning these files;

g.    All Chats content to include all images, videos and other files, and associated sent date and timestamp, including all available metadata concerning these files;

h.    All Memories content to include all images, videos and other files, and associated sent date and timestamp, including all available metadata concerning these files;

1

i.       Payment information, including billing address, shipping address, and payment instruments, associated with any Snap, Inc. services used by the accounts listed in Attachment A-1;

j.       The folder "My Eyes Only" content to include all passwords, images, videos, messages, and other files, and associated sent date and timestamp, including all available metadata concerning these files;

k.       All location history with associated timestamps;

l.       All search history with associated timestamps;

m.      All accounts linked to the accounts in Attachment A-1, including accounts linked by Snap or third-party cookies, SMS number, Internet Protocol Address, secondary or recovery emails, or other account-linking methods available to Snap, and to any accounts for which the accounts in Attachment A-1, are the secondary or recovery email address.

## II.    Information to be Seized by Law Enforcement Personnel

Any and all records that relate in any way to the account described in Attachment A-1 which is evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 18 U.S.C. § 2252(a)(2) (distribution of child pornography), 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography), and 18 U.S.C. § 2250(a) (failure to register as a sex offender), to include:

a.       Images, videos and other files depicting the production, distribution, receipt, possession of or access with intent to view child erotica, child pornography, the sexual exploitation of minors, sexually explicit conduct, and illicit sexual conduct;

b.       Communications or documentations regarding the production, distribution, receipt, possession of or access with intent to view child erotica, child pornography, the sexual exploitation of minors, sexually explicit conduct, and illicit sexual conduct;

c.       Communication or documentation regarding access to and/or interaction with minors, to include the enticement of a minor;

d.       Images depicting the interior or exterior of residences, public establishments, and vehicles;

e.       All images, messages, communications, calendar entries, and contacts, including any and all preparatory steps taken in furtherance of these crimes;

f.       Communication, information, documentation and records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts;

2

g.      Evidence of the times the accounts or identifiers listed on Attachment A-1 were used;

h.      All images, messages and communications regarding wiping software, encryption or other methods to avoid detection by law enforcement;

i.      Passwords and encryption keys, and other access information that may be necessary to access the accounts or identifiers listed on Attachment A and other associated accounts;

j.      Credit card and other financial information, including but not limited to, bills and payment records evidencing ownership of the subject account;

a.      All existing printouts from original storage which concern the categories identified in subsection II.a; and

b.      All "address books" or other lists of contacts.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated absent further order of the court. The investigative team may continue to review any information not segregated as potentially privileged.

**ATTACHMENT B-2 (Google Warrant)**

**Particular Things to Be Seized**

I.      **Information to be Produced by Google from November 1, 2024 through the Present**

To the extent that information associated with the Google accounts described in Attachment A-2 is within the possession, custody, or control of Google, Google is required to disclose to the government the following information pertaining to the **TARGET GOOGLE ACCOUNTS**:

A.      **Google Account Information**
1.      Google account registration information, including name, user-specified contact information, recovery email address, recovery SMS number, account creation timestamp and IP address, and a list of Google services the account holder has enabled or accessed;
2.      Account change history IP addresses and associated timestamps;
3.      Google account login and logout IP addresses and associated timestamps;
4.      All means and sources of payment for all Google products and services (including complete credit or bank account numbers), and detailed billing records;
5.      All cookie and user-specific advertising data, including third-party cookies;

B.      **Gmail Account Information**
1.      Gmail specific subscriber information, login and logout IP addresses and associated timestamps;
2.      Gmail specific non-content email header information, originating message IP addresses, and account settings;
3.      The contents of all e-mails, attachments and chat messages stored in the account, including copies of e-mails sent to and from the account, draft e-mails, the source and destination e-mails sent addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;
4.      Contents of all available deleted emails;
5.      Records and associated with any forwarding or fetching accounts of the Target Accounts listed in Attachment A, all other Google accounts linked to the Target Accounts because of cookie overlap, all other Google accounts that list the same SMS phone number as the Target Accounts, all other Google accounts that share the same creation IP address as the Target Accounts (collectively the "Linked Target Accounts");
6.      For each Linked Target Account, Google shall produce:
        a.  The name of the Target Account it was linked to; and
        b.  The information that linked the Linked Target Account to the Target Account (forwarding or fetching account, cookie overlap, SMS phone number, recovery email address, or creation IP address)
        c.  The subscriber information, login and logout IP addresses and associated timestamps.

C.      **YouTube Account Information**
1.      YouTube specific subscriber information, including date of birth and country;
2.      YouTube specific login and logout IP addresses and associated timestamps;

1

3.   YouTube video upload IP addresses and associated timestamps;
4.   Copies of all publicly available videos;
5.   Copies of all private videos and associated video information;
6.   Copies of all private messages;
7.   All Channel or Video comments;
8.   All contacts;

**D.   Google Voice Account Information**
1.   Voice specific subscriber information, including signup IP and associated timestamp and user-provided name;
2.   Call and text logs;
3.   All account settings and account change history;
4.   Contents of all voicemail messages and text messages;

**E.   Blogger Account Information**
1.   Blogger specific subscriber information, including Blog registration information, Blog creation IP and timestamp, Blog owner/admin subscriber information, and post or comment owner information;
2.   All contents of private blog posts and comments;

**F.   Google+ Account Information**
1.   Google+ specific subscriber and IP address information, including associated timestamps;
2.   All IP addresses and timestamps associated with Posts, Comments, or Photos;
3.   All Content/Activity Stream, including posts, comments, and photos;
4.   All contacts/Circles;
5.   Google+ Profiles;

**G.   Android Account Information**
1.   Android specific subscriber and IP address information, including associated timestamps;
2.   All device IDs, IMEIs, and MEIDs associated with the **Target Google Accounts**;
3.   Timestamps, including device registration, first check-in, and last check-in;
4.   All Google accounts tied to the Android device(s) if any;
5.   Android hardware information;
6.   Cell carrier/service provider;
7.   All apps downloaded to the device;

**H.   Photos Account Information**
1.   Photos specific subscriber and IP address information, including associated timestamps;
2.   All upload IP addresses and associated timestamps;
3.   Contents of all Photos and Albums, including all exif data included by the user as part of the upload;

**I.   Drive Account Information**

2

1.    Drive specific subscriber and IP address information, including associated timestamps;
2.    All upload IP addresses and associated timestamps;
3.    All Drive content, including Docs, Sheets and Slides;

**J.**    **Google Location and Search History Information**
1.    All search history and associated timestamps, including all "clicks" and "queries;"

**K.**    **Waze Location and Search History Information**
1.    Waze specific subscriber information, login and logout IP addresses and associated timestamps;
2.    Waze specific non-content information, including account settings;
3.    All Waze search history and associated timestamps, including all "clicks" and "queries;"
4.    All Waze locations saved by the user.

**II.**    **Information to be Seized by Law Enforcement Personnel**

Any and all records that relate in any way to the account described in Attachment A-2 which is evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(2) (distribution of child pornography), 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography), and 18 U.S.C. § 2250(a) (failure to register as a sex offender), to include:

a.    Images, videos and other files depicting the production, distribution, receipt, possession of or access with intent to view child erotica, child pornography, the sexual exploitation of minors, sexually explicit conduct, and illicit sexual conduct;

b.    Communications or documentations regarding the production, distribution, receipt, possession of or access with intent to view child erotica, child pornography, the sexual exploitation of minors, sexually explicit conduct, and illicit sexual conduct;

c.    Communication or documentation regarding access to and/or interaction with minors, to include the enticement of a minor;

d.    Images depicting the interior or exterior of residences, public establishments, and vehicles;

e.    All images, messages, communications, calendar entries, and contacts, including any and all preparatory steps taken in furtherance of these crimes;

f.    Communication, information, documentation and records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts;

g.    Evidence of the times the accounts or identifiers listed on Attachment A-2 was used;

3

h.    All images, messages and communications regarding wiping software, encryption or other methods to avoid detection by law enforcement;

i.    Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed on Attachment A-2 and other associated accounts;

j.    Credit card and other financial information, including but not limited to, bills and payment records evidencing ownership of the subject account;

k.    All existing printouts from original storage which concern the categories identified in subsection II.A; and

l.    All "address books" or other lists of contacts.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated absent further order of the court. The investigative team may continue to review any information not segregated as potentially privileged.

**ATTACHMENT B-3 (Apple Warrant)**

**Particular Things to Be Seized**

I.     **Information to be Produced by Apple from November 1, 2024 through the Present**

To the extent that information associated with the Apple account described in Attachment A-3 is within the possession, custody, or control of Apple, Apple is required to disclose to the government the following information pertaining to the **TARGET APPLE ACCOUNT**:

b.     All device registration or customer information associated with the account and associated devices, including name, address, email address, telephone number, MAC address, and UDID;

c.     All customer service records, including support interactions, warranty and repair information;

d.     All iTunes data, including basic subscriber information, purchase information, and iTunes Match data;

e.     All Apple retail store, online store, and gift card information associated with the account;

f.     All iCloud data existing on Apple's servers, including subscriber information, mail logs, and all iCloud content, including, but not limited to, email, photo stream, photo library, iCloud Drive, contacts, calendars, bookmarks, and Safari browsing history;

g.     All iOS device activation information and device backups, including photos and videos in the Camera Roll, device settings, app data, iMessage, SMS, and MMS messages and voicemail;

h.     All FaceTime records, including call invitation logs;

i.     All iMessage records, including capability query logs;

j.     All Find My iPhone records and transactional activity, including records of all attempts to locate, lock, or wipe the device;

k.     All My Apple ID, iForgot, and Game Center connection logs and transactional records;

l.     Subscriber Information, including the name and location, supplied by the user at the time of registration, the date the account was created and all of the services of the Target ISP used by each Target Account.

m.     Records of user activity for each connection made to or from the Target Account, including log files; messaging logs; the date, time, length, and method of connections; data transfer

volume; user names; and source and destination Internet Protocol addresses, and any telephone, instrument or other unique identifiers associated with the Subject Communication Accounts;

n.    All telephone or instrument numbers associated with the Target Account (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));

## II.    Information to be Seized by Law Enforcement Personnel

Any and all records that relate in any way to the account described in Attachment A-3 which is evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 18 U.S.C. § 2252(a)(2) (distribution of child pornography), 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography), and 18 U.S.C. § 2250(a) (failure to register as a sex offender), to include:

a.    Images, videos and other files depicting the production, distribution, receipt, possession of or access with intent to view child erotica, child pornography, the sexual exploitation of minors, sexually explicit conduct, and illicit sexual conduct;

b.    Communications or documentations regarding the production, distribution, receipt, possession of or access with intent to view child erotica, child pornography, the sexual exploitation of minors, sexually explicit conduct, and illicit sexual conduct;

c.    Communication or documentation regarding access to and/or interaction with minors, to include the enticement of a minor;

d.    Images depicting the interior or exterior of residences, public establishments, and vehicles;

e.    All images, messages, communications, calendar entries, and contacts, including any and all preparatory steps taken in furtherance of these crimes;

f.    Communication, information, documentation and records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts;

g.    Evidence of the times the accounts or identifiers listed on Attachment A-3 was used;

h.    All images, messages and communications regarding wiping software, encryption or other methods to avoid detection by law enforcement;

i.    Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed on Attachment A-3 and other associated accounts;

2

      j.      Credit card and other financial information, including but not limited to, bills and payment records evidencing ownership of the subject account;

      k.      All existing printouts from original storage which concern the categories identified in subsection II.A; and

      l.      All "address books" or other lists of contacts.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated absent further order of the court. The investigative team may continue to review any information not segregated as potentially privileged.

**ATTACHMENT B-4 (Yahoo Warrant)**

**Particular Things to be Seized**

I.    **Information to be Produced by Yahoo from November 1, 2024 through the Present**

To the extent that information associated with the Yahoo accounts described in Attachment A-4 is within the possession, custody, or control of Yahoo Inc., including any messages, records, files, logs, images, videos, or information that have been deleted but are still available to Yahoo Inc., Yahoo, Inc. is required to disclose to the government the following information pertaining to each account or identifier listed in Attachment A-4:

a.    The contents of all e-mails, attachments and chat messages stored in the accounts described in Attachment A-4, including copies of e-mails sent to and from the account, draft e-mails, the source and destination e-mails sent addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.    All existing printouts from original storage of all of the electronic mail described above in Section I.A. above;

c.    All internet search data including all queries and location data;

d.    All transactional information of all activity of the electronic mail addresses described above in Section I.A, including log files, dates, times, methods of connecting, ports, dial ups, and/or locations;

e.    All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

f.    All records or other information regarding the identification of the account described above in Section I.A, to include application, full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, all screen names associated with subscribers and/or accounts, all account names associated with the subscriber, methods of connecting, log files, means and source of payment (including any credit or bank account number), and detailed billing records;

g.    All records indicating the services available to subscribers of the electronic mail address described above in Section I.A.;

1

h.      All records pertaining to communications between Yahoo and any person regarding the account, including contacts with support services and records of actions taken;

i.      Yahoo Messenger conversation logs and files shared associated with the accounts listed in Attachment A-4;

j.      Payment information, including billing address, shipping address, and payment instruments, associated with any Yahoo services used by the account listed in Attachment A-4;

k.      All search history with associated timestamps;

l.      All accounts linked to the accounts in Attachment A-4, including accounts linked by Yahoo or third-party cookies, SMS number, Internet Protocol Address, secondary or recovery emails, or other account-linking methods available to Yahoo, and to any accounts for which the accounts in Attachment A-4 are the secondary or recovery email address.

**II.     Information to be Seized by Law Enforcement Personnel**

a.      Any and all records that relate in any way to the Yahoo accounts described in Attachment A-4 which is evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 18 U.S.C. § 2252(a)(2) (distribution of child pornography), 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography), and 18 U.S.C. § 2250(a) (failure to register as a sex offender), to include:

1.      Images, videos and other files depicting the production, distribution, receipt, possession of or access with intent to view child erotica, child pornography, the sexual exploitation of minors, sexually explicit conduct, and illicit sexual conduct;

2.      Communications or documentations regarding the production, distribution, receipt, possession of or access with intent to view child erotica, child pornography, the sexual exploitation of minors, sexually explicit conduct, and illicit sexual conduct;

3.      Communication or documentation regarding access to and/or interaction with minors, to include the enticement of a minor;

4.      Images depicting the interior or exterior of residences, public establishments, and vehicles;

5.      All images, messages, communications, calendar entries, and contacts, including any and all preparatory steps taken in furtherance of these crimes;

6.      Communication, information, documentation and records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts;

2

7.     Evidence of the times the account or identifier listed on Attachment A was used;

8.     All images, messages and communications regarding wiping software, encryption or other methods to avoid detection by law enforcement;

9.     Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed on Attachment A and other associated accounts;

10.     Credit card and[i] other financial information, including but not limited to, bills and payment records evidencing ownership of the subject account;

b.     All existing printouts from original storage which concern the categories identified in subsection II.A; and

c.     All "address books" or other lists of contact.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable.

If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated absent further order of the court. The investigative team may continue to review any information not segregated as potentially privileged.

_____